[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT (DOCKET ENTRY NO. 143)
The plaintiff has moved that the defendant be found in contempt for failing to abide by the terms of a judgment of dissolution entered in accordance with a separation agreement of the same date signed by both of the parties. Section 5.9 of the agreement provides as follows:
 "The husband agrees to pay the costs of college tuition, room and board for the two children. The husband makes this Agreement knowing he has no obligation to pay any post age 18 expenses for the children."
It is the plaintiff's claim that the defendant, despite demand, has "neglected, failed and refused to reimburse the plaintiff" for certain college expenses she has expended for the children Elanit and Aviva.
The parties were married on June 28, 1969. A decree of dissolution of their marriage was entered on October 14, 1992. At that time, the parties signed a separation agreement which contained the language quoted above. The separation agreement was CT Page 9982 incorporated in the decree and is part of the judgment.
At the time of the hearing for dissolution, the following colloquy took place between the court and the defendant:
 "THE COURT: Mr. Kayne, you've heard the agreement recited by-or highlighted by Attorney Gans. Do you have any questions concerning this agreement?
MR. KAYNE: No, I don't. My wife and I drafted it.
 The Court: And have you thoroughly considered the opportunity to engage counsel on your own behalf?
MR. KAYNE: Yes, I have, your Honor.
 THE COURT: And are you satisfied with your decision that you've elected not to engage counsel on your own behalf?
MR. KAYNE: Yes, I have, your Honor.
 THE COURT: And do you feel that based on all the circumstances which you're aware of that this agreement is fair and equitable?
MR. KAYNE: Yes, I do, your Honor.
 THE COURT: And do you feel you have the present capability to carry out this agreement?
MR. KAYNE: Yes, I do.
THE COURT: And you're not getting any alimony, are you?
MR. KAYNE: No, Your Honor.
 THE COURT: Seriously, you're not getting any alimony. And do you understand by giving up alimony today, you're giving it up forever?
MR. KAYNE: Yes, your Honor.
THE COURT: If there should be any change in circumstances regarding employment — for instance, CT Page 9983 employment, health, the economy — you could never come back to this court and seek alimony from your former wife.
MR. KAYNE: I understand that, your Honor.
 THE COURT: And have you entered into this agreement voluntarily, any reservations in entering into the agreement?
MR. KAYNE: No, your Honor.
 THE COURT: Do you understand that the agreement provides for joint legal custody of the minor children, however, the primary residence of your children would be with your wife?
MR. KAYNE: Yes, I do, your Honor.
 THE COURT: But yet you're awarded reasonable and liberal rights of visitation.
MR. KAYNE: Yes.
 THE COURT: And you've also agreed to pay as unallocated alimony and support which is equal to one-half of your net pay, as defined in the agreement?
MR. KAYNE: Yes, your Honor.
 THE COURT: You understand all the — you're satisfied with the ramifications of unallocated alimony and support?
MR. KAYNE: Yes, I do.
 THE COURT: Are you comfortable with the definition of net pay?
MR. KAYNE: Yes, I do. I drafted it.
 THE COURT: Do you also agree to pay the cost of college tuition and room and board for the two children?
MR. KAYNE: Yes, I do, your Honor. CT Page 9984
 THE COURT: Do you understand that the Court cannot order you to do that, other than by written agreement of the parties?
MR. KAYNE: I understand that.
 THE COURT: You're comfortable with some kind of understanding between you and your wife as to — as to what constitutes college tuition and room and board?
MR. KAYNE: Yes.
THE COURT: No caps.
MR. KAYNE: Excuse me?
THE COURT: There's no cap.
MR. KAYNE: I understand that."
On December 1, 1994, the parties entered into a stipulation wherein the defendant reaffirmed his obligation to pay the cost of college tuition, room and board for his two children, Elanit who will be 22 years of age in November and Aviva who is 19 years of age. Elanit is a matriculating student in the Tisch School of the Arts at New York University. She has one semester of college left. Aviva is a student at Southern Connecticut State University (SCSU), having entered SCSU for the spring semester in 1998. She has attended the summer semester and is enrolled for the fall semester for `98-`99.
The defendant has refused to pay Elanit's room, board and tuition for a summer program in 1997 in Amsterdam, Holland, which was accepted by N.Y.U. as a full semester program and has refused to pay tuition, room and board for the academic year 1997-98. He also has refused to pay Aviva's tuition, room and board for the spring semester 1998, summer semester 1998 and apartment and food expense and tuition for the fall semester 1998. The last payment made by the defendant was on June 6, 1997.
It is the defendant's position that he advised the plaintiff and Elanit that when his 401(k) plan moneys were gone, there would be no more money for college. When Elanit called him to tell him that she had had straight A's her first semester, he CT Page 9985 asked her what she wanted. She advised she wanted to thank him and to say that his investment was "doing very well." His response was that the stock market was "about to crash" and "best of luck in making it to your senior year."
The defendant's responses during all of this period as he responded to Elanit, to Aviva and to the plaintiff all indicate an intentional and wilful disregard of the court's orders regarding college education.
With respect to the Amsterdam expenses, it is Elanit's wish that she pay those expenses (see defendant's exhibit 4) so the court is not including those expenses in the calculation of the arrearage.
The plaintiff or Elanit have expended the following monies for college tuition, room and board that is the defendant's obligation:
ELANIT
2-1-97 N.Y.U. balance 1997 $ 378.00 (exhibit J)
7/21/97 Stafford loan (Elanit) 3,500.00 (exhibit E)
8/15/97 N.Y.U. remaining 1/2 tuition fee 6,180.00 (exhibit D)
8/15/97 Stafford loan (Elanit) 2,000.00 (exhibit E)
9/15/97 Board/meal equivalent (Elanit) 1,630.00 (exhibit F)
9/30/97 Deferred payment plan N.Y.U. 1,460.00 (exhibit F)
1/2/98 Deferred payment plan N.Y.U. 5,135.20 (exhibit F)
3/20/98 Meal plan Spring `98 (Elanit) 1,630.00 (exhibit F)
3/31/98 Spring `98 N.Y.U. 2,615.57 (exhibit F)
4/7/97 N.Y.U. 1,915.58 (exhibit F)
2/28/98 N.Y.U. 2,601.37 (exhibit F)
TOTAL $ 29,050.72 CT Page 9986
AVIVA
11/97 Admission fee 90.00 (exhibit J)
12/97 Registration fee 1,694.00 (exhibit 1)
12/3/97 Housing deposit 100.00 (exhibit I)
1/2/98 SCSU room, board tuition 4,972.00 (exhibit I)
4/24/98 SCSU tuition 1,041.00 (exhibit I)
5/19/98 SCSU housing 625.00 (exhibit I)
6/18/98 SCSU housing 625.00 (exhibit I)
8/98 SCSU tuition, room board 3,811.00 (exhibit N)
TOTAL $12,958.00
At the time all of these expenses were incurred, the defendant had funds with which to pay them. As is reflected in the defendant's financial affidavit of September 25, 1997 (plaintiff's exhibit G), during all of 1997 he was employed at Forbes earning $127,500. His affidavit reports $10,625 gross monthly earnings and $5,975 net monthly earnings. On January 30, 1998, he received a severance pay of $83,750, a net of $42,511 (plaintiff's exhibit O).
The court finds a wilful and intentional disregard of the court's orders and finds the defendant in contempt. As noted, during all of this period the defendant had the ability to pay and refused to pay.
The defendant is presently unemployed. Payment of the amounts owed to the plaintiff are deferred for the present. The defendant shall be obligated upon the two Stafford loans of Elanit totaling $5,500 and shall be obligated upon the loan of the plaintiff executed in August, 1998.
 COUNSEL FEES
Plaintiff's counsel has submitted an affidavit regarding counsel fees. The statement attached shows services for the period January 6, 1997 through the month of July, 1998. There has CT Page 9987 been time expended in August for the hearings on this motion. Plaintiff's counsel claims fees of $30,000 for her services for this period. The plaintiff has paid $21,100 toward these fees and there appears to be a balance outstanding of $15,000. The court finds these fees to be fair and reasonable. Upon this motion and the court's finding of contempt, the court allows $15,000 by way of counsel fees pursuant to the provisions of § 46b-87 of the General Statutes and orders that this sum shall also be paid by the defendant to the plaintiff. The date by which this sum is to be paid is also held in abeyance until the court's determination of the further motions presently pending to be heard.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE